## WILTSE v. BARNES.

1. **Common Carrier**: EXAMINATION OF GOODS BY CONSIGNEE: LIABILITY OF CARRIER'S AGENT.   Where the consignor of goods shipped by an express company instructs the company not to permit the consignee to examine the goods before delivery and payment of charges, the agent of the company is authorized to refuse such examination and incurs no personal liability by returning the goods to the consignor.

2. ———: ———: ———.   If the express company has a rule forbidding inspection of goods by the consignee before delivery, it must appear that the rule was brought to the knowledge of the shipper to be binding upon the consignee.

*Appeal from Fayette Circuit Court.*

TUESDAY, JUNE 12.

THIS is an action of replevin which was commenced before a justice of the peace.   The justice rendered judgment for plaintiff in the sum of forty-five dollars and costs.   Defendant appealed to the Circuit Court, where the cause was submitted upon the following agreed statement of facts:

" That about the first day of September, 1875, defendant, J. C. Barnes, as local agent of the American Express Company, received at the office of said company at Strawberry Point,

Iowa, a certain box marked " dry goods," billed and marked 'C. O. D. thirteen dollars,' and consigned to plaintiff; that defendant immediately informed plaintiff of the receipt of the box; that plaintiff tendered the amount of express charges, one dollar and fifty cents, and demanded an inspection of the goods, and then claimed that the box contained a human skeleton, the bones of which, before matriculation, were the prop-erty of plaintiff; that the same had been left with one W. Mahone, the consignor, in Chicago, Ill., under an agreement between them that said Mahone was to matriculate the same in a good, workmanlike manner, for the sum of fifteen dol-lars; that plaintiff had paid him five dollars on said agreement, and with the further understanding that the skeleton, when complete, should be shipped to plaintiff by express; that previous to shipment some correspondence had taken place between Mahone and plaintiff in relation to the loss of some of the bones, and an offer on the part of Mahone to supply them for the sum of three dollars; that plaintiff directed said Mahone to supply the lost bones, and when the job was completed to ship the same to him at Strawberry Point, Iowa, by express, C. O. D. Plaintiff then claimed the right to inspect the skeleton contained in the box to ascertain if the bones had been supplied and the matriculation well executed. Defendant then informed plaintiff that it was against the rules and regulations of the express company to allow an inspection of express goods without the consent of the consignor; that defendant immediately telegraphed to consignor for permission to allow plaintiff to inspect the goods; that consignor refused to allow an inspection to be made, and directed that unless plaintiff received the same and paid the amount claimed at once that defendant should ship the same back to consignor; that within a few days thereafter defendant reported to plaintiff the orders and directions of said consignor, and requested him to receive the goods and pay the amount demanded; that plaintiff then offered to place the amount of the claim, viz: C. O. D. thirteen dollars in money in the hands of defendant, on condition that he could then inspect the goods, and if found to be perfect in its parts

and the workmanship good, then the plaintiff to keep the goods and defendant to retain the money, otherwise plaintiff to return the goods and take back the money, and offered to leave the question to defendant to decide whether the parts were all there and the job reasonably well done, at the same time tendering the express charges, one dollar and fifty cents, and leaving the same on defendant's table; that defendant refused to receive the money or allow plaintiff to inspect the goods, and notified plaintiff that he should re-ship the goods to Chicago, according to instructions; plaintiff then notified defendant that he should proceed to replevin the same; that while plaintiff was endeavoring to obtain his writ of replevin defendant placed the box upon an eastern-bound freight train with orders that it be left at some station east and taken up by the next express train; that the officer with the writ of replevin reached the express office before the arrival of the first eastern-bound express train, and that the box was in defendant's hands at the time the writ issued; that the value of the goods was forty-five dollars; that plaintiff's damages, if any, were ten dollars." The court rendered judgment for defendant. Plaintiff appeals.

*A. S. Blair*, for appellant.

*J. H. Peters*, for appellee.

DAY, CH. J.—In addition to the foregoing stipulation, it is agreed that the following rule of the express company was admitted in evidence: "No agent, clerk, messenger or driver is authorized to open for inspection or examination any parcel, box or bale, accompanied by a C. O. D. collection, until said collection and express charges are paid." The following extract of a circular calling attention of agents to the above rule, dated July 1st, 1862, was also admitted: "Our orders from shippers are to transport, collect, deliver and return the proceeds of their invoices, and, if there are errors, they must be reconciled with and by the shipper. We neither make nor sell the goods, and cannot be held accountable for any discrep-

1. COMMON carrier: examination of goods by consignee: liability of carrier's agent.

ancies. This rule may give offense to some unreasonable persons, but a plain explanation should satisfy them that this company should not be censured. If consignees refuse the goods because they are not allowed to make the examination before payment, then they must write the shipper for a change of his order; and under no circumstances are you authorized to allow the examination without the written permission of the shipper or the agent from where the goods came, and if the goods are positively refused, advise that agent at once of the facts, and wait for further orders."

If this rule had been brought home to the knowledge of the shipper, then it would be presumed that he shipped pursuant to its provisions, and with the expectation that it would be observed. There is, however, no proof that the shipper knew of the existence of this rule; still, we think it was competent for him to stipulate as to the terms of shipment, and the conditions under which delivery should be made to the consignee.

It does not appear that any special contract was made at the time of shipment. It is, however, shown that before this action was commenced the consignor refused to allow an inspection of the property to be made, and directed that unless plaintiff received the same and paid the amount at once defendant should ship it back to consignor. After receiving this direction the defendant had no right to deliver the property in violation of the orders of the consignor, nor had the consignee, as against the defendant, a right to the possession of it. The defendant, by obeying the orders of the consignor, did not render himself liable for the value of the property.

The only case cited by appellant which has much direct bearing upon this question is that of *Lyons v. Hill*, 46 N. H., 49. In that case a package of goods was forwarded by a carrier to be paid for on delivery. It was held that the carrier did not render himself liable for the price by furnishing the consignee reasonable opportunity for examination and taking the property back when it was found to be unsatisfactory. In that case there was no proof of a special direction by the consignor not to permit an inspection. We think, under the facts of this case, the defendant is not liable. AFFIRMED.